IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ANTONIO JOHNSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 3:14-cv-01839 |
| | ) | |
| BRUCE WESTBROOKS, Warden, | ) | Judge Trauger |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Petitioner Antonio Johnson, a state prisoner incarcerated at the Lois M. DeBerry Special Needs Facility in Nashville, Tennessee, filed a *pro se* petition under 28 U.S.C. § 2254 for the writ of habeas corpus with a supporting memorandum. (ECF Nos. 1 & 2.) The respondent filed an answer in opposition to the petition (ECF No. 25), along with a complete copy of the underlying state-court record (ECF No. 21). Thereafter, the petitioner filed a motion for leave to file a reply brief (ECF No. 30) and motion to appoint counsel (ECF No. 31). The court will grant the motion for permission to file a reply brief. The petition is ripe for review, and this court has jurisdiction. 28 U.S.C. § 2241(d).

As an initial matter, regarding the motion for appointment of counsel, the court notes that there is no constitutional right to counsel in a federal habeas corpus proceeding. *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002). Pursuant to 18 U.S.C. § 3006A, the court may permit the appointment of counsel for any financially eligible person seeking relief under 28 U.S.C. § 2254 if "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). Thus, courts have held that the appointment of counsel in a habeas proceeding is mandatory only if the district court determines that an evidentiary hearing is required. *See Swazo v. Wyo. Dep't of Corrs. State Penitentiary Warden*, 23 F.3d 332, 333 (10th Cir.1994); Rule 8(c), Rules Gov'g § 2254 Cases. Otherwise, the decision to appoint counsel for a federal habeas petitioner is within the discretion of the court. *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir.1986). Factors influencing a court's decision include the complexity of the factual and legal issues in the case, as well as the petitioner's ability to investigate facts and present claims. *Garcia v. USICE (Dep't of Homeland Security)*, 669 F.3d 91, 98–99 (2d Cir. 2011). Circuit courts have found no abuse of a district court's discretion in failing to appoint counsel in a federal habeas corpus proceeding where no evidentiary hearing was

required or the issues were straightforward and capable of resolution on the record. *See, e.g.*, *Morris v. Ulibarri*, 513 F. App'x 777, 779 (10th Cir. 2013).

Upon consideration of the petition and supporting memorandum, the answer, reply, and the underlying state-court record as a whole, the court finds for the reasons set forth herein that the petitioner is not entitled to relief on the grounds asserted. The court further finds that an evidentiary hearing is not necessary, *see Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (an evidentiary hearing is not required when the record conclusively shows that the petitioner is not entitled to relief). Consequently, the appointment of counsel is not warranted. Johnson's petition will be denied, the motion for appointment of counsel denied as moot, and this matter dismissed.

**I.     PROCEDURAL BACKGROUND**

In March 2010, the petitioner was found guilty by a Montgomery County jury of one count of selling more than a half a gram of cocaine, for which he was sentenced to twelve years' imprisonment as a multiple offender at 35%, the sentence to be served consecutively to a previously imposed sentence. (May 11, 2010 Judgment, ECF No. 21-1, at 14.) The judgment was affirmed on direct appeal. *State v. Antonio Dwayne Johnson* ("*Johnson I*"), No. M2010-02086-CCA-R3-CD, 2012 WL 1900137 (Tenn. Ct. Crim. App. May 25, 2010), *perm. app. denied* (Tenn. Sept. 19, 2012).

On February 13, 2013, the petitioner filed a *pro se* petition for post-conviction relief. (ECF No. 21-11, at 2.) After the appointment of counsel, the petitioner filed an amended petition. (ECF No. 21-11, at 27.) The trial court conducted a hearing at which the petitioner and a Drug Agent with the Clarksville Police Department testified. (Post-Conviction Hr'g Tr., ECF No. 21-12.) The court thereafter entered an order denying the petition. (ECF No. 21-11, at 33.) That decision was affirmed as well. *Johnson v. State* ("*Johnson II*"), No. M2013-01919-CCA-R3-PC, 2014 WL 1266295 (Tenn. Ct. Crim. App. March 27, 2014), *perm. app. denied* (Tenn. June 23, 2014).

Johnson filed his § 2254 petition and supporting memorandum in this court on September 10, 2014 (ECF Nos. 1 & 2). The respondent concedes that the petition is timely.

**II.    STATEMENT OF FACTS**

The Tennessee Court of Criminal Appeals summarized the testimony presented during trial as

follows:[1]

>   Anthony Botts testified that he previously worked as a paid confidential informant for the Clarksville Police Department Major Crimes Unit. On August 22, 2008, he participated in a controlled drug purchase from Defendant. Early that evening, he met with officers from the Clarksville Police Department, including Agent William Evans, who searched him and his vehicle, and Agent Evans placed a recording device or "wire" on him. Mr. Botts testified that he called Defendant, whom he referred to as "Big Dog," and asked about buying some "dope." Defendant thought that he meant powder cocaine and said that he did not have any. Mr. Botts then "referred to the hard, being crack cocaine," and Defendant indicated that he had some of that. Mr. Botts asked Defendant the price of the cocaine, and Defendant said that they would discuss it in person. He told Defendant that he was still at work and would need approximately forty-five minutes before meeting with Defendant.
>
>   Mr. Botts testified that he called Defendant forty-five minutes to an hour later to arrange a meeting. Defendant then instructed him to drive to Caldwell Lane. However, Mr. Botts did not feel comfortable meeting there, so they changed the location to Roberts Street. Mr. Botts then drove to a blue metal building/boat shop on the 41-A By Pass, near its intersection with Roberts Street. Defendant was not there when Mr. Botts arrived, so he placed a couple of calls to Defendant. Mr. Botts testified that because his cell phone reception was bad, several of the calls were dropped. He eventually talked with Defendant who said that he was behind the building. They made arrangements for Mr. Botts to drive around the building onto Roberts Street. Mr. Botts testified that as he was driving down the street, he saw Defendant walking on the side of the street wearing a white t-shirt and blue jeans and carrying a styrofoam food box. Defendant approached the driver's side window, but Mr. Botts told him that the window would not roll down. Defendant walked to the passenger's side, opened the door, leaned in, and handed Mr. Botts the styrofoam box containing the controlled substance. Mr. Botts then handed Defendant $175. Mr. Botts testified that he and Defendant made small talk and that he looked in the container to make sure that it contained the drugs. Defendant walked away from the car, and Mr. Botts drove back to the "meet spot" and met agent Evans. He gave Agent Evans the styrofoam container and drugs, and he and his vehicle were again searched. Mr. Botts admitted that at the time of the transaction, he had been convicted of a sexual offense and was on the TBI's sex offender registry.
>
>   Agent William Thomas Evans, a drug agent with the Major Crimes Unit, testified that on August 22, 2008, he participated in a controlled drug buy involving Defendant. He and other agents met Anthony Botts at a predetermined location. Agent Evans searched Mr. Botts and his vehicle, and Mr. Botts and his vehicle were wired. Mr. Botts was then given $307 in buy money from the drug fund to make the purchase. Agent Evans testified that Mr. Botts called Defendant and that the conversation was recorded. The tape of the conversation was played for the jury, and Defendant indicated that he had some "hard hard," which is slang for crack cocaine. Agent Evans also explained that "ball" is slang for an "eight ball" or an eighth of an ounce of crack cocaine or cocaine. He said that an "eight ball" was approximately 3.5 grams of cocaine and may cost between $75 to $250, which "really varies of how much product is actually in the City right now." Agent Evans estimated that the typical amount of cocaine taken from someone using the drug was .1 to .3 grams, and the cost was "[roughly] ten dollars every tenth of a gram." He identified

---

[1] The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Mr. Botts' and Defendant's voices on the phone call recording.

Agent Evans testified that he then followed Mr. Botts to a blue building near the intersection of 41-A By-Pass and Roberts Street. He and other agents maintained both audio and visual contact with Mr. Botts. Agent Evans testified that Mr. Botts initially parked on the right side of the blue building. He said:

> [Mr. Botts] first parked outside to where you could still see him from the ByPass. Several phone calls were attempted, they were dropping, it was kind of a bad area for cell phone service. At one point, I did hear him outside the vehicle. Agents advised he was outside the vehicle. Attempted a few more phone calls and for the most part were dropping, I don't know if it was Mr. Johnson's phone or if it was Mr. Botts' phone causing the problem. Shortly thereafter, he did get back in his vehicle and I was advised then he turned onto the By-Pass, a distance of maybe a hundred, a hundred and fifty feet and then turned on to Roberts Street and was headed up—it is a small hill, headed away from the By-Pass.

Agent Evans testified that after the transaction, Defendant walked away, and Mr. Botts turned around and drove back to the predetermined location. Agent Evans testified that Mr. Botts was under constant surveillance until he arrived back at the location. Agent Evans then took possession of the styrofoam box containing what appeared to be crack cocaine, and he searched Mr. Botts and his vehicle. He also received $132 back from Mr. Botts, which was the amount of the "buy money" not used by Mr. Botts.

Agent Evans testified that the styrofoam box contained a plastic bag with "a white crystalline rock like substance, which appeared to be consistent with crack cocaine." He field-tested the substance, and placed it in a film canister. The styrofoam box with the aluminum still in it was packaged in a larger brown bag. Agent Evans then placed the items in the police department's evidence drop box. Agent Evans acknowledged that at the time of the purchase, Mr. Botts was a registered sex offender. He was also on probation and wore an electronic ankle bracelet to monitor his whereabouts.

Shaunna Allman, supervisor of the evidence room for the Clarksville Police Department, testified that the items were checked into evidence from the drop box and then sent to the Tennessee Bureau of Investigation (TBI) for analysis.

Sergeant David O'Dell testified that he was working as a narcotics investigator for the Major Crimes Unit on August 22, 2008, and participated in the drug buy by conducting surveillance. He was positioned on the 41-A By-Pass near "the Old Task Force Headquarters, right by Edmondson Ferry and Roberts Avenue [sic]." He used a digital camera to take photographs and video of the transaction. Sergeant O'Dell saw Defendant walking down Roberts Street from the "Caldwell Lane area, Maddox Circle area, walking down towards the By-Pass." He took a photograph of Defendant with a white styrofoam container in his hand. Defendant was wearing a white t-shirt and long blue jean shorts. Sergeant O'Dell testified that he observed Defendant approach Mr. Botts' vehicle. He said that Defendant did not have the styrofoam box when he left the area.

Agent Joey Williamson testified that he also participated in the controlled buy on August 22, 2008. He conducted surveillance from a building directly across from Roberts Street. Agent Williams saw Defendant walking down Roberts Street wearing a white t-shirt and jean shorts. He also saw Defendant carrying a white container. Agent Williamson testified that he observed Defendant lean into the passenger's side of Mr. Botts' car. Agent Williamson then drove down the By-Pass toward Avondale, turned around, and drove back to the area of Roberts Street. He saw Defendant walking back up

> Roberts Street approximately ten to fifteen yards from Mr. Botts' vehicle. Defendant was no longer carrying the container.
>
> Special Agent forensic scientist Patti Choate of the TBI testified that she analyzed the rock-like substance in the present case and determined that it contained 1.4 grams of cocaine, a Schedule II controlled substance.

*Johnson I*, 2012 WL 1900137, at *1–3. Based on this evidence, the jury convicted the petitioner of selling more than a half a gram of cocaine.

The Tennessee Court of Criminal Appeals summarized the evidence presented during the post-conviction hearing as follows:

> [T]he Petitioner testified at the evidentiary hearing that at the time of the hearing, he was serving sentences for three convictions. Trial counsel was appointed from the public defender's office to represent him in this case. The Petitioner was on bond, and he and his wife met with counsel one time. The meeting lasted about twenty minutes and occurred in counsel's office. The Petitioner said that he and counsel did not discuss trial strategy or witnesses during the meeting but that counsel advised him that the State was offering to let him plead guilty in exchange for "ten years in the penitentiary and ten years on paper." The Petitioner said that he and his wife looked at each other and that he told counsel, "I will take it." However, counsel then told him that the State had withdrawn the offer and that "the DA don't want that no more, he wants twenty years in the penitentiary." The Petitioner said that only five to ten minutes had elapsed between the State's making and withdrawing the offer and that counsel did not offer an explanation for the withdrawal. The Petitioner was going to schedule another appointment with counsel, but counsel told him that "we'll meet in court."
>
> The Petitioner testified that during his only meeting with trial counsel, he told counsel to file a motion to suppress evidence but that counsel did not file any pretrial motions. He said that counsel should have investigated whether Botts's driver's license was valid and whether Botts's credibility was "any good." The Petitioner acknowledged that counsel cross-examined Botts at trial about being on the sexual offender registry. However, counsel should have questioned whether Botts, as a registered sex offender, was a reliable witness. Counsel also should have challenged audio and video recordings introduced into evidence at trial because the video showed only the "back of a black guy's head" and the audio included only Botts's part of the conversation. The Petitioner said that he viewed the video and heard the audio while he was in the county jail and that another attorney from the public defender's office provided him with the recordings.
>
> On cross-examination, the Petitioner testified that he would have taken the State's plea offer "because I would have been out of the penitentiary system right now . . . , and I would have been with my family right now, if I took the ten/ten." However, the Petitioner would not have accepted an offer for twenty years in confinement. He acknowledged that the evidence against him in this case was "incredibly strong." The Petitioner said that when he tried to make another appointment with counsel, counsel told him that counsel "would see [him] in the courtroom tomorrow."
>
> The Petitioner acknowledged that at trial, the State asked Botts if he was a convicted sex offender and had been convicted of sexual battery. The State also asked Botts if he had been paid for his work in this case. Trial counsel asked Botts on cross-examination about his prior convictions, being on the sex offender registry, and being paid by the Major Crimes Unit. Counsel also questioned Botts about his not paying income tax on the payments he received from the Major Crimes Unit in order to show

> Botts was dishonest. The Petitioner acknowledged that Botts's audio-recorded telephone call to set up the drug buy was a one-sided conversation but that the audio-recording of the drug buy was not. The Petitioner said that he pled guilty to aggravated robbery when he was seventeen or eighteen years old because he was guilty in that case but that "I am not going to plead guilty to nothing that I did not do." On redirect examination, the Petitioner testified that he did not plead guilty in this case because he did not commit the crime.
>
> Clarksville Police Department Drug Agent Will Evans, who was a witness for the State at the Petitioner's trial, testified for the Petitioner that a portion of Botts's telephone conversation "only picked up Mr. Botts" but that "once there was actual contact made at the vehicle on Roberts Street . . . both sides of the conversation was picked up." He said he thought a photograph taken during the drug buy showed the Petitioner's face. Botts began working as a CI for the police department in 2007, and Agent Evans worked with him in five or six buys involving three different buyers. Agent Evans said that Botts also worked for Wolf Auto Sales and Auto Glass but acknowledged that Botts's work for the police department was a significant part of Botts's income. Before trial, no one from the public defender's office interviewed Agent Evans. On cross-examination, Agent Evans testified that someone from the police department was watching Botts at all times during Botts's drug buy with the Petitioner.

*Johnson II*, 2014 WL 1266295, at *1–2.

## III. ISSUES PRESENTED FOR REVIEW

Johnson asserts that his Sixth Amendment right to the effective assistance of counsel was violated on the basis that his trial counsel failed to:

(1) investigate the allegations in the indictment;

(2) adequately prepare for trial;

(3) interview vital witnesses;

(4) file a motion to suppress evidence based on the unreliability of Anthony Botts, a convicted felon;

(5) challenge the reliability of Botts at trial;

(6) ask the trial judge to act as the thirteenth juror and dismiss the "illegal verdict" (ECF No. 1, at 6);

(7) challenge the legality of the sentence enhancement or investigate the petitioner's past criminal record, resulting in an "illegal sentence."

(ECF No. 1, at 6.)[2]

## IV. STANDARD OF REVIEW

### A. Exhaustion and Procedural Default

A federal district court will not entertain a petition for the writ of habeas corpus unless the petitioner has first exhausted all available state-court remedies for each claim in his petition. 28 U.S.C. §

---

[2] The claims are numbered differently in the habeas petition and in the state's answer.

2254(b)(1). While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine designed to promote comity between the states and the federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his claims to every available level of the state court system. *Rose v. Lundy*, 455 U.S. 509, 518–20 (1982); *see also Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) ("[A] federal habeas petitioner . . . [must] provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim."). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Once a petitioner's federal claims have been raised in the highest state court available,[3] the exhaustion requirement is satisfied, even if that court refused to consider the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990).

A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claims he presents for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987) (citation omitted). Moreover, if a habeas petitioner retains the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(c). Ordinarily, habeas petitions containing unexhausted claims are dismissed without prejudice in order to permit the petitioner the opportunity to pursue them in state court. *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) (citing *Rose*, 455 U.S. at 518, 520–22); *see also Rhines v. Weber*, 544 U.S. 269 (2005) (reconfirming the continued relevance of *Rose* under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")).

If, however, an unexhausted claim would be procedurally barred under state law, for instance by a statute of limitations or a state rule barring successive petitions, then the claim is deemed exhausted (because no further state review is available) but procedurally defaulted (because it was not presented to a state court for review), and may not be considered by the federal court on habeas review except under

---

[3] In Tennessee, review by the state Supreme Court is not required for exhaustion. Instead, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies available for that claim.'" *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. S. Ct. R. 39).

extraordinary circumstances. *Alley v. Bell*, 307 F.3d 380, 385–86 (6th Cir. 2002) (citations omitted); *In re Cook*, 215 F.3d 606, 607–08 (6th Cir. 2000). Specifically, in order to obtain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate both "cause" for the procedural default and actual prejudice resulting from the alleged constitutional errors, or alternatively that failure to consider the claims will result in a "fundamental miscarriage of justice." *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 311 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

### B. Fully Exhausted Claims

Even when a petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 raises claims that have been properly exhausted in the state courts, this court's review of the state court's resolution of those issues remains quite limited. First, this court may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, a claim asserting only a violation of state law, even if fully exhausted, is not cognizable in federal habeas corpus. *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Further, under § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* In other words, a federal court is bound by the state court's adjudication of the petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable factual determination. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Further, this court must presume the correctness of state-court factual determinations, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous."), *abrogated on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111

(1995).

With these principles in mind, the court will turn to the examination of the claims raised in Johnson's petition for habeas relief.

## V.     DISCUSSION

### A.     Exhausted Claims

The petitioner's state post-conviction appellate brief raised only one claim: that "Appellant's trial counsel rendered ineffective assistance of counsel in violation of the VIth Amendment of the U.S. Constitution and Art. I § 9 of the Tennessee Constitution." (Post-Conviction App. Br., ECF No. 29-1, at 11.) This claim was not broken into express subparts in the petitioner's brief, and the argument in support of this claim consisted of two very succinct paragraphs:

> In the case at hand, it is undisputed that Mr. Bloodworth [trial counsel] never interviewed the police officer prosecuting Mr. Johnson. No proof disputes Mr. Johnson's claim that meetings between Mr. Johnson and his attorney were sparse at best and Mr. Bloodworth put off Mr. Johnson's attempts to set up appointments. Likewise, there were no discussions between Mr. Bloodworth and Mr. Johnson about witnesses or trial strategy. Further, requested motions to suppress were never filed by Mr. Johnson as directed. Uni[n]formed acts and decisions by trial counsel do not get a presumption of reasonableness on post-conviction as the prepared attorney's actions would enjoy.
>
> This is not an issue of guilt or innocence, but instead it is an issue of Fundamental Fairness and Due Process. As stated by one court, "Whatever may be the outcome of this case on retrial, the integrity of the administration of criminal justice in this state cannot be maintained if such a conviction is permitted to stand." Post-conviction relief is justified because having counsel that is unprepared for trial is no better than having no counsel at all. The undisputed evidence is that Antonio Dwayne Johnson's counsel was not prepared.

(*Id.* at 12–13 (internal citations to the record omitted).)

The Tennessee Court of Criminal Appeals construed the brief as including claims that the petitioner "received the ineffective assistance of trial counsel because counsel never interviewed Agent Evans, had 'sparse' meetings with him, 'put off' his attempts to meet with counsel, did not discuss witnesses or trial strategy with him, and never filed motions to suppress as he requested." *Johnson II*, 2014 WL 1266295, at *3. In addition, the court also addressed the issue of whether trial counsel was ineffective for failing to challenge Anthony Botts's credibility at trial. The Court finds that these claims roughly correspond with Claim 2 (failed to interview vital witnesses); Claim 3 (failed to adequately prepare for trial); Claim 4 (failed to file motion to suppress the testimony of Anthony Botts); and Claim 5 (failed to challenge Botts's credibility).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that, in order to successfully claim that a lawyer's assistance was so ineffective as to violate the Sixth Amendment, a defendant must meet two requirements. "First, the defendant must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* As discussed above, however, federal habeas relief may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Thus, when a claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is *not* whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, ----, 131 S. Ct. 770, 785 (2011). As the Supreme Court clarified in *Richter*,

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Richter*, 131 S. Ct. at 786 (internal quotation marks and citation omitted).

In addressing the petitioner's claims in this case, the Tennessee Court of Criminal Appeals correctly articulated the *Strickland* standard for proving ineffective assistance of counsel as requiring that the petitioner "prov[e] both that counsel's performance was deficient and that the deficiency prejudiced the defense." *Johnson II*, 2014 WL 1266295, at *3 (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland v. Washington*, 466 U.S. at 687)). In applying the standard to the petitioner's claims, the court first noted that the state should have had trial counsel testify at the evidentiary hearing but did not. *Johnson II*, 2014 WL 1266295, at *4. The court nonetheless found that "even without counsel's testimony at the post-conviction evidentiary hearing to contradict the Petitioner's claims," the

petitioner had failed to establish either that his counsel's performance fell "below the range of competence demanded of attorneys in criminal cases" or that he was prejudiced by any alleged deficiency:

> Regarding counsel's failure to interview Agent Evans, the Petitioner has not alleged how interviewing the agent would have helped his case. We note that the Petitioner questioned Agent Evans at the evidentiary hearing and that the officer did not provide any information that would have been beneficial to the Petitioner at trial. As for counsel's failure to meet adequately with the Petitioner or discuss witnesses or trial strategy with him, the Petitioner has not named any additional witnesses that counsel could have presented at trial or explained what trial strategy counsel should have used to change the outcome of his case. We note that during the evidentiary hearing, the Petitioner testified that counsel should have raised Botts's credibility at trial. However, the Petitioner acknowledged that the State questioned Botts about his prior sexual crime, his being on the sex offender registry, and his being a paid CI. The Petitioner also acknowledged that trial counsel questioned Botts about his being a registered sex offender and his failing to pay income taxes on the payments he received from the police department. As the post-conviction court noted, trial counsel attacked Botts's credibility. As for counsel's failure to file pretrial motions to suppress evidence, the Petitioner has offered no legal basis for filing such motions. Therefore, we agree with the post-conviction court that the Petitioner has failed to demonstrate that counsel rendered deficient performance or that he was prejudiced by any deficiency.

*Id.*

Upon review of the entire record, the court concludes that the petitioner has not shown that the Tennessee Court of Criminal Appeals' application of the *Strickland* standard was contrary to federal law 28 U.S.C. § 2254(d)(1), involved an unreasonable application of such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2). *Richter*, 131 S. Ct. at 785. The petitioner is therefore not entitled to relief on the basis of any of these exhausted claims.

### B.  Unexhausted or Procedurally Defaulted Claims

As for the remaining claims, Claim 1 (failure to investigate the allegations in the indictment), Claim 6 (failure to ask the trial judge to act as the thirteenth juror and dismiss the "illegal verdict" (ECF No. 1, at 6)), and Claim 7 (failure to challenge the legality of the sentence enhancement or investigate the petitioner's past criminal record, resulting in an "illegal sentence"), although these claims were raised in the petitioner's amended petition for post-conviction relief in the trial court, they were not raised in his appeal in the Tennessee Court of Criminal Appeals. Because the time for doing so has now passed, and the petitioner is barred by Tennessee law from presenting those claims in the state court now, Tenn. Code Ann. § 40-30-102(c), the claims are considered to be exhausted (because no further state review is

available) but procedurally defaulted, and may not be considered by the federal court on habeas review unless the petitioner demonstrates both cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or alternatively that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The petitioner argues, erroneously, that his claims were all fully exhausted. He does not acknowledge that any of his claims are procedurally defaulted or assert any arguable basis for overcoming the procedural default.[4] They are therefore barred from review in this court. Even if they were not, however, the claims are not supported by sufficient facts to permit review on the merits. *See* Rule 2(c)(2), Rules Gov'g § 2254 Cases (requiring the habeas petition to "state the facts supporting each ground"). In support of Claim 1, the petitioner does not specify which indictment allegations were not investigated, what information further investigation might have revealed, or how the lack of investigation affected the outcome of trial. Similarly with regard to Claim 7, the petitioner argues only that "[c]ounsel had a duty to investigate petitioner's criminal history, in order to be prepared to dispute the state assessment of petitioner's 'Appropriate Sentencing Range', thus enabling the trial court to impose the proper sentence under the appropriate range. Which resulted in the trial court's imposition of an 'illegal' sentence." (ECF No. 2, at 9.) The petitioner does not specify what facts additional investigation would have uncovered, how such facts might have benefited him, or which sentencing range he believes he should have fallen into. And in Claim 6, the petitioner asserts that trial counsel was ineffective because he did not ask the trial judge to dismiss the illegal verdict, but he does not elaborate upon this claim in his petition, memorandum, or reply brief, or suggest why the verdict was illegal.

Without more specific pleadings, the court cannot address the merits of any of these claims. Moreover, the petitioner cannot establish that an error of constitutional dimension occurred or that he was

---

[4] The petitioner does not argue that the ineffectiveness of post-conviction counsel constitutes cause to excuse the procedural default of his claims. Even if he had, such an argument would fail as a matter of law. In *Martinez v. Ryan*, 566 U.S. ----, 132 S. Ct. 1309, 1320 (2012), and *Trevino v. Thaler*, 569 U.S. ----, 133 S. Ct. 1911 (2013), the Supreme Court held that the ineffective assistance of post-conviction counsel can establish "cause" to excuse the procedural default of a defendant's substantial claim of ineffective assistance at trial under certain circumstances. *See also Sutton v. Carpenter*, 745 F.3d 787, 795–96 (6th Cir. 2014) (holding based on *Martinez* and *Trevino* that the "ineffective assistance of post-conviction counsel can establish cause to excuse a Tennessee defendant's procedural default of a substantial claim of ineffective assistance at trial"). However, neither the Supreme Court nor the Sixth Circuit has held that the ineffective assistance of post-conviction *appellate* counsel can constitute cause to overcome a procedural default.

actually prejudiced as a result, for purposes of overcoming the procedural default of these claims. Nor does the petitioner have a colorable claim of actual innocence of the type necessary to establish that failure to consider the defaulted claim will result in a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 316 (1995) ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.").

In short, the court declines to reach the merits of these claims because they are barred by procedural default, and the petitioner makes no effort to overcome the procedural default. Even if he had, the petitioner has not provided sufficient facts to permit the court to reach the merits of the claims. The petitioner is not entitled to relief on the basis of these claims.

**VI.    CONCLUSION**

For the reasons set forth herein, Antonio Johnson's petition under § 2254 will be denied and this matter dismissed with prejudice.

Federal Rule of Appellate Procedure 22 provides that an appeal of the denial of a habeas petition may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing § 2254 Cases requires that a district court issue or deny a COA when it enters a final order. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The district court must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).

The court finds that the petitioner has failed to make a substantial showing of the denial of a constitutional right and that his claims do not merit further review. The court will therefore deny a COA.

An appropriate order is filed herewith.

ALETA A. TRAUGER
United States District Judge